UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Laura Couch, | : Case No. 1:11-cv-174 |
| Plaintiff, | : |
| vs. | : |
| Commissioner of Social Security, | : |
| Defendant. | : |

**ORDER**

Before the Court are the Commissioner's objections to the Report and Recommendation of the Magistrate Judge. (Doc. 20) The Commissioner objects to the Magistrate Judge's recommendation (see Doc. 18) that the Commissioner's decision denying benefits to Plaintiff be reversed, and this matter remanded for an award of benefits. For the following reasons, the Court agrees in part with the Magistrate Judge's recommendation.

**FACTUAL BACKGROUND**

Laura Couch first applied for disability benefits on February 11, 2004, alleging disability from July 16, 1996 due to migraine headaches. Her application was denied at the administrative level, and by the ALJ after an evidentiary hearing. Couch appealed to this Court. (See Case No. 1:08-cv-300) The Magistrate Judge recommended to this Court that the Commissioner's decision be reversed, because the record

established that Couch was disabled and entitled to benefits for the period of onset through at least December 31, 1997. (Case No. 1:08-cv-300, Doc. 11.) Couch's last insured date at that time was September 30, 2008, and the record at that point contained no records of treatment from December 1997 to November 1998. The ALJ had not assessed Couch's disability after September 2008, and the Magistrate Judge recommended that the matter be remanded for a determination of whether Couch remained disabled subsequent to December 1997. There were no objections filed by either party, and this Court adopted the Magistrate Judge's Report and his recommendations, remanding the matter to the Commissioner pursuant to sentence 4 of 42 U.S.C. § 405(g). (Doc. 12)

After remand, a different ALJ conducted a second evidentiary hearing. Prior to that hearing, the ALJ noted that the prior order finding Couch disabled extended her last date insured to September 30, 2000. The ALJ requested that Couch submit medical records and evidence documenting her treatment during that period. (TR 653) The second evidentiary hearing was held on October 26, 2009. (TR 941-972) Couch testified about her continuing problems with headaches and her history of medical treatment. An extensive collection of medical records of that treatment from November 1998 through February 2006 and beyond was admitted into the record.

The ALJ's written decision of November 16, 2009 began by stating: "The issue on remand is whether the disability found by the District Court commencing July 1, 1996, and extending at least through December 31, 1997, continued beyond that date or recommenced at any time while the claimant still had insured status." (TR 618) The ALJ accurately outlined the eight-step sequential analysis required by the regulations to determine if a claimant continues to be disabled (TR 619-620), and then entered a series of findings of fact and conclusions of law.

The ALJ concluded that Couch experienced medical improvement as of January 1, 1998, rendering her no longer disabled. (TR 621) The ALJ also concluded that Couch had the capacity to perform light work as of that date, with restrictions of no work in direct sunlight or in an environment of strong odors or excessive dust, fumes, or gases. She could perform only simple, routine, repetitive work without strict production requirements, and could not work around heights, hazards, or dangerous equipment. (TR 622) The ALJ found that these restrictions did not preclude Couch's ability to work in occupations such as sedentary and light clerical worker, jobs that were identified by the vocational expert that existed in the national and local economy. (TR 625)

Couch sought review of the ALJ's decision by the Appeals Council, which rejected her request and found that the ALJ's

decision was substantially supported by the record. (TR 607) Couch timely appealed the Commissioner's final decision to this Court. (Doc. 1)

**ANALYSIS**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's final decision by determining whether the record as a whole contains substantial evidence to support that decision. "Substantial evidence means more than a mere scintilla of evidence, such as evidence a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Secretary of Health and Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted). The evidence must do more than create a suspicion of the existence of the fact to be established. Rather, the evidence must be enough to withstand a motion for a directed verdict when the conclusion sought to be drawn from that evidence is one of fact for the jury. Id.

If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence. Elkins v. Secretary of Health and Human Serv., 658 F.2d 437, 438 (6th Cir. 1981). The substantial-evidence standard "... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because

substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The district court reviews de novo a Magistrate Judge's report and recommendation regarding Social Security benefits claims. Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

This Court adopts in toto Section II of the Magistrate Judge's Report which accurately summarizes Couch's medical records contained in the record. (See Doc. 18 at 2-12) Those records document Couch's treatment for migraine headaches by several different medical providers from 1994 through 2009. The Magistrate Judge properly articulated the analysis that applies to determine if previously-established disabling medical impairments have improved. Medical improvement is any decrease in the medical severity of an impairment: "[A] medical improvement is related to an individual's ability to work only 'if there has been a decrease in the severity ... of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the individual's] functional capacity to do basic work activities[.]'" (Doc. 18 at 13, quoting Kennedy v. Astrue, 247 Fed. Appx. 761, 765 (6th Cir. 2007)). And as noted above, both the Magistrate Judge's Report and the ALJ's decision properly describe the sequential

evaluation process used to make that determination. (Doc. 18 at 13-14; TR 619-620)

Medical Improvement

In considering medical improvement at step 3 of the sequential analysis, the ALJ noted that Couch had stopped seeing Dr. Martin in December 1997. Dr. Martin is with the Cincinnati Headache Clinic at Drake Hospital where Couch was treated for her headaches from 1996 through 1997. The records of that treatment and Couch's own logs documenting headaches she experienced, formed the primary basis for the Court's prior order finding Couch disabled by her migraine headaches, and awarding closed-period benefits. Although Couch submitted a significant amount of medical evidence on remand, the ALJ found that the only record of treatment from November 1998 to September 2000 was a few visits documented in the office notes of her family physician, Dr. Alter. The ALJ found that the record contained no helpful information about functional limitations caused by headaches between December 1997 and September 2000. (TR 621) The ALJ therefore concluded that Couch's medical improvement

> ... is established by the fact that she apparently did not require any medical attention, at least any that has been documented, for at least 11 months. When she finally did go to see Dr. Alter in November 1998, she reported only increasing headache without further description. The claimant did not mention headaches, and in fact reported feeling better, in January 1999, and did not again experience headache pain of sufficient severity to cause her to return to Dr. Alter until June 1999. She visited her physician only one

more time, in March 2000, before her insured status
ended, and during that visit did not mention headaches.
In the absence of any other evidence aside from her
testimony, such as a diary or log of her headache
experience on a day to day basis, it is found that the
claimant clearly had medical improvement after December
1997 such that whatever headaches she was having did
not necessitate anything other than very occasional
medical attention and generally allowed her to perform
her normal functions of daily living.

(TR 622)

The Magistrate Judge found that this conclusion lacks substantial support in the record. It is the Commissioner's ultimate burden of proof to establish that the severity of a claimant's impairment has medically improved, and that the claimant is now able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1); Kennedy v. Astrue, 247 Fed. Appx. at 764-765. Improvement is generally determined by comparing the prior and the current medical evidence, that is by "... changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." 20 C.F.R. §404.1594(b)(1). Moreover, any medical improvement found to exist will relate to a claimant's ability to work only if there has been a decrease in the severity of the impairment **and** an increase in the claimant's functional capacity to work. 20 C.F.R. § 404.1594(b)(3).

The Magistrate Judge found that the ALJ erroneously relied upon the lack of documented medical treatment, and Couch's failure to keep a headache log (as she had done while being treated by Dr. Martin) from January to November 1998, to conclude

-7-

that Couch's impairment had medically improved.  At the hearing, the ALJ asked Couch if she could remember what happened then, or could explain why there were no records of treatment.  Couch testified that she had a miscarriage, and immediately became pregnant again during 1998.  She could not take any of the medications prescribed for her headaches while she was pregnant, which she testified would account for most of that year.  The ALJ then asked her what had happened when she stopped seeing Dr. Martin.  Couch explained that Dr. Martin ran a twelve-week program called "The Headache School."  After she completed that program, Dr. Martin asked her to participate in an ongoing study.  Couch told Dr. Martin that she was planning on a pregnancy, and Dr. Martin told her that "... there was nothing he could do with me," as his studies could not include pregnant women.  This is consistent with Couch's testimony at the first ALJ hearing in March 2006.  She was asked then if she saw Dr. Martin after 1997, and she responded "No, because I got pregnant and he wanted to do hormone studies on women - so, no."  (TR 585)  The records also establish that Couch gave birth to her third child in July 2000, which would lead to the conclusion that she was precluded from taking migraine medications for approximately the preceding nine months, beginning sometime in the fall of 1999.

The Magistrate Judge also cites records from Dr. Rajan who had treated Couch for migraines in the mid-1990's.  Couch told

Dr. Rajan in October 1993 that she was planning on a pregnancy, and Dr. Rajan told her she would have to discontinue her migraine medications. On January 20, 1994, Dr. Rajan began to slowly taper and stop her medications before she became pregnant. (TR 114-115)

SSR 96-7p is the Social Security administration's policy interpretation on evaluating a claimant's symptoms. As pertinent here, that ruling states:

> [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment prescribed and there are no good reasons for this failure. **However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.**

SSR 96-7p, 1996 SSR LEXIS 4, at *21-22 (emphasis added). The ALJ specifically questioned Couch about her treatment after December 1997, and also asked Couch if her headaches improved during pregnancy. Couch responded "A little bit. They were not quite as severe. That was one of the blessings of having a baby...". (TR 961) Yet the ALJ did not evaluate Couch's testimony and her explanation that she was unable to take

migraine medications while pregnant, and that her headaches improved while pregnant. Rather, the ALJ concluded that the lack of records reflecting repeated or consistent complaints to medical providers for headaches established the fact that her headaches did not **require** medical attention during that time. The failure to analyze Couch's explanation is not harmless, especially in view of the ALJ's findings at paragraph 4, that Couch's headaches continued to impose "definite and measurable work limitations" after December 1997 and continuing through September 2000. (TR 620-621)

Credibility

In evaluating a claimant's reported symptoms from a medical impairment, the ALJ must consider a claimant's credibility to evaluate subjective complaints against objective medical data. 20 C.F.R. § 416.929(a) provides that, once the claimant establishes a medical condition, the ALJ must consider (1) whether objective medical evidence confirms the severity of the reported symptoms, or (2) whether the condition can reasonably be expected to produce the alleged disabling symptoms. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ's assessment, if properly explained and supported by substantial evidence, is

entitled to deference from this Court.  If the ALJ finds a claimant's testimony is incredible, the reasons supporting that finding must be clearly stated.  Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994).  The regulations set forth factors used to assess credibility; these include daily activities; the duration, frequency, and intensity of pain; the effectiveness of medication; treatment received; and any other factors concerning the individual's functional limitations due to pain.  20 C.F.R. §404.1529(c).  And SSR 96-7p counsels that consistency of a claimant's statements is a "strong indication" of the claimant's credibility: "The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  SSR 96-7P, 1996 SSR LEXIS 4 at *11.

The ALJ concluded that Couch was "not a fully credible witness.  Her allegations about the nature and frequency of her headaches have not been entirely consistent throughout the record, particularly with respect to her headaches as she experienced them during the time period under consideration." (TR 623)  The ALJ particularly cited the absence of a headache calendar after December 1997, and Couch's intermittent visits with Dr. Alter.  The calendar or log that Couch kept during her

-11-

treatment with Dr. Martin was illuminating, but her failure to continue with that effort after discontinuing treatment with Dr. Martin does not raise a reasonable inference that Couch was less than credible in describing her symptoms after that date.

In reaching the conclusion about Couch's credibility, the ALJ also stated that Couch testified that she was pregnant and unable to take any medications during the period July 1996 through December 1997. (TR 622-623) This statement is not correct. During that time, Couch was being treated by Dr. Martin. In April 1996, she reported to the clinic that her first child was fifteen months old. (TR 536) In June 1996, Couch was put on a trial of hormonal birth control pills to try to relieve her migraine pain. (TR 545) She clearly was not pregnant during this time. Rather, Couch testified that she became pregnant after December 1997, during the eleven-month period about which the ALJ specifically inquired.

The ALJ also stated that Couch testified that Dr. Alter, her family physician, "prescribed pain medication for her when she was not pregnant during the time period now under consideration." (TR 623) This is correct, as Couch reported to Dr. Alter on June 14, 1999 that her medications were "not helping," and Alter prescribed pain medications. But this observation would appear to support Couch's testimony that she was experiencing painful headaches during this time, not detract from it. Moreover, Couch

reported to Dr. Jurrell on September 27, 1999 that she was having an increased incidence of migraine headaches, fatigue, and irritability. (TR 571) The ALJ stated that Couch did not see Alter again until March 2000, and did not mention her headaches at that visit. But the notes of that March visit (TR 120) state that Couch was five months pregnant at that time.

In addition, the ALJ did not compare Couch's testimony at the 2009 hearing with her 2006 hearing testimony. The Court finds that her testimony is notably consistent in describing her migraines and the resulting limitations. The Court has also reviewed her medical records and finds no hint that any of her treating physicians found her to be less than credible in reporting her symptoms over time. To the contrary, there are several references to her reasonable attitude and her persistence in seeking treatment for what was described at one point as intractable migraine. (TR 141)

The ALJ also cited Couch's statement to physicians when she was hospitalized for two days in October 2001 due to severe headache; the discharge summary states that Couch had migraines in the past "which had been well controlled." (TR 139) And in January 2003, during an emergency room visit, Couch reported that she could "control her headaches at home with prescription medications." (TR 623, citing Ex. 6F at TR 334) The ALJ found these statements undermined her testimony that she has

-13-

debilitating headaches several times a week that last for two to four hours.  The Magistrate Judge found that this reliance was misplaced, and concluded that Couch's use of the word "control" was a reference to her "usual ability to cope with the debilitating pain" of her migraines.  (Doc. 18 at 28)  This Court cannot definitively conclude what Couch may have meant when she said she could normally "control" her headaches.  It may be that promptly taking her prescribed medications and lying down in a darkened room for two to four hours is a method of "control" that she was referring to during these hospital visits, when she complained of intractable pain lasting several days.

A similar issue arose in Couch's prior appeal.  The ALJ had relied on a notation from Dr. Martin in October 1997 that Couch was "doing reasonably well in the last month" to conclude that her testimony was not fully credible.  The Court disagreed, and found that Dr. Martin's notation "says little about [Couch's] ability to engage in sustained work activity for that time period given that she still experienced five migraine headaches per month."  (Case No. 1:08-cv-300, Doc. 11 at 17)

Couch testified that she has incapacitating headaches (where she's "not moving and functioning") several times a week, that most often last from two to four hours.  Occasionally the headaches last for ten or eleven days.  (TR 957)  In those instances she would be forced to go to the emergency room.  On

-14-

the occasions that she is incapacitated, she testified that she has several close family members who live nearby and who are always willing to come and help with her children.  She also said that she has worked intermittently as a substitute teacher at her children's school; when a substitute is needed, the school calls her in the morning, and if she does not have a headache she is able to work that day.  But there are days when she has gone to work, developed a migraine, and had to leave work and go home.  She testified that the school had been very understanding about her condition.  (TR 963)  There is no discussion of this testimony in the ALJ's decision.  The Court also notes that Couch was not physically present for the ALJ hearing and participated by telephone.  While she consented to that procedure, that situation may have restricted the ALJ's opportunity to evaluate Couch's credibility.

<u>Residual Function</u>

The ALJ's evaluation of Couch's credibility factored into the analysis of Couch's residual functional capacity.  In paragraph 2 of the findings and conclusions, the ALJ noted that this Court's previous order found that Couch's impairment left her unable to work for the full course of an eight hour day or five-day workweek.  The ALJ further stated that this Court "did not specify any residual functional capacity level justifying that determination."  The ALJ therefore assumed that the Court

found that Couch's headaches precluded her from performing even sedentary work. (TR 620) Then in paragraph 7, addressing Couch's residual functional capacity, the ALJ adopted the prior ALJ's RFC findings: a full range of work with limitations of lifting 20 pounds occasionally and 10 pounds frequently; sit, stand and walk six hours in an eight hour day; no working in direct sunlight or around strong odors, excessive dust, fumes, or gases; perform only simple, routine, repetitive work without strict production requirements; and no work around heights, hazards, or dangerous equipment. (TR 624)

The Court's prior decision did not directly address all of these physically limiting factors included in the prior ALJ's RFC findings. However, the Court clearly stated: "This case centers on plaintiff's credibility. The [vocational expert] testified that if plaintiff missed two or more days of work per month because of her migraine headaches, she would be unemployable. ... **Thus, whether plaintiff was disabled depends on whether her testimony on the frequency and severity of her headaches credibly establishes she would miss two or more days of work per month prior to September 30, 1998, her date last insured.**" (Case No. 1:08-cv-300, Doc. 11 at 13; emphasis added) From this conclusion, it is evident to this Court that the critical question in formulating Couch's RFC was and is whether she would miss more than two days per month of work due to debilitating

headaches.  The vocational expert testified at the 2009 hearing that Couch would be functionally disabled if she did so, which was consistent with both the prior expert's testimony and with Couch's description of her limitations.

The Court is mindful of the fact that this case has been reviewed by two ALJs and has been before this Court on two occasions.  The Magistrate Judge has recommended that this matter be remanded with instructions to award benefits to Couch.  However, the Court may do so "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  Faucher v. Secretary of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1994).  Given the factual errors and omissions in the ALJ's decision discussed above, the Court must conclude that a remand of this matter to the Commissioner is necessary to permit the Commissioner to fully assess Couch's testimony regarding the issue of medical improvement, as well as her testimony concerning the limitations caused by her migraines during the time period December 1997 to September 2000.  The Commissioner is not precluded from seeking additional evidence on these issues should that prove to be warranted.

## CONCLUSION

For all of the foregoing reasons, the Commissioner's objections to the Magistrate Judge's Report are overruled in

part.  The decision of the Commissioner is vacated, and this matter is remanded pursuant to sentence four of 42 U.S.C. §405(g) for specific findings on the issues of whether Couch's impairments had medically improved after January 1998, and whether she remained functionally disabled after that date due to the frequency of her debilitating migraine headaches.

    SO ORDERED.

    THIS CASE IS CLOSED.

DATED: March 19, 2012         <u>s/Sandra S. Beckwith</u>
                                         Sandra S. Beckwith
                                         Senior United States District Judge